IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| MARIA PINA on behalf of herself and all others similarly situated, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:21-cv-10107 |
| WELLS FARGO BANK, N.A. d/b/a, WELLS FARGO HOME MORTGAGE, ) | |
| Defendant. ) | |

_____

NOTICE OF REMOVAL

Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage ("Wells Fargo" or "Defendant") gives notice pursuant to 28 U.S.C. §§ 1332, 1441 and 1453 of the removal of the civil action commenced in the Massachusetts Superior Court, Plymouth County, identified below. Removal of this case is proper under the Class Action Fairness Act of 2005, codified at 28 U.S.C. §§ 1332(d), 1453.  In support, Wells Fargo states:

I.    Nature of Plaintiff's Complaint.

1.    On September 21, 2020, Plaintiff Maria Pina ("Pina" or "Plaintiff") commenced this putative consumer class action in the Massachusetts Superior Court, Plymouth County (the "State Court") by filing her Complaint, captioned Maria Pina v. Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage, No. 2083CV00691 (the "Action").  See Exhibit A, Complaint. Wells Fargo waived service of the summons on December 23, 2020.  See Exhibit B, Waiver of Service.  There has been no substantive activity since the inception of this case.

2.      Plaintiff's Complaint alleges that "[a]s part of its mortgage servicing and collection business, Wells Fargo Mortgage regularly places more than two collection calls a week to Massachusetts Consumers." See Complaint ¶ 1.[1]

3.      Plaintiff also alleges that "Wells Fargo Mortgage's calling practices are illegal in Massachusetts as the Massachusetts Attorney General has regulated it an 'unfair or deceptive act or practice for a credit' to 'initiate a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number, for each debt...'" Id. at ¶ 1 (citing 940 CMR 7.04(1)(f) and Armata v. Target Corp., 480 Mass. 14, 15-16, 23, 99 N.E.3d 788, 790, 195-96 (2018)).[2]

4.      Further, Plaintiff alleges that "Wells Fargo Mortgage placed more than two collection calls to Plaintiff Maria Pina … within a seven-day period in an attempt to collect a debt from a home mortgage loan, violating the express provisions of § 7.04(1)(f)." See Complaint ¶ 3.

5.      Plaintiff's Complaint fails to specifically allege when she allegedly received any phone calls or during what specific seven-day period she allegedly received more than two calls. See generally Complaint.  Rather, the most specificity provided by the Complaint is that "[w]ithin the last four years, Wells Fargo Mortgage called Plaintiff's cellular telephone in excess of two times within a seven-day period in an attempt to collect the Debt." Id. ¶ 12.

6.      Plaintiff identifies the putative class that she seeks to represent as:

---

[1] Wells Fargo denies the allegations in the Complaint and files this notice without waiving any claims, defenses, exceptions, or obligations that may exist in its favor.
[2] Plaintiff does not cite the entire regulation.  Importantly, Plaintiff omits the section of the regulation providing that "a creditor shall not be deemed to have initiated a communication with a debtor if the communication by the creditor is in response to a request made by the debtor for said communication." See 940 CMR § 7.04(1)(f).

All consumers residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, received in excess of two telephone calls regarding a debt from Wells Fargo Home Mortgage within a seven-day period to their residence, cellular telephone, or other provided telephone number.

See Complaint ¶ 17.

7.      Based upon these allegations, the Complaint asserts a single cause of action for violation of Mass. Gen. Laws ch. 93A, § 9 ("Chapter 93A").  See Complaint ¶¶ 31-36.

8.      For relief, Plaintiff seeks, on behalf of herself and the putative class, both injunctive relief and money damages.  For injunctive relief, Plaintiff seeks an "injunction preventing Defendant from placing in excess of two collection calls within any seven days to any Massachusetts consumers' telephone regarding a debt."  Id. at Demand for Relief (Wherefore clause, at A).

9.      For damages, Plaintiff seeks, for herself and the putative class, "actual and/or statutory damages under M.G.L. ch. 93A § 9" and further seeks "treble damages under M.G.L. ch. 93A § 9."  Id.  Plaintiff also seeks to recover attorneys' fees and costs.  Id.

10.     Plaintiff does not specify in the Complaint the actual amount of damages she is seeking, but her civil cover sheet filed contemporaneously with her Complaint states that he is seeking "$50,000.00."  See Exhibit C, Civil Action Cover Sheet.

II.     Subject Matter Jurisdiction Under The Class Action Fairness Act.

11.     The Court has subject matter jurisdiction over this matter under the Class Action Fairness Act of 2005, codified at 28 U.S.C. §§ 1332(d), 1453 ("CAFA").

12.     CAFA provides that federal courts have jurisdiction over class actions based on state law when: (1) there is "minimal" diversity (meaning that at least one plaintiff and one defendant are from different states); (2) the amount in controversy exceeds $5 million; and (3) the action involves at least 100 class members. 28 U.S.C. §§ 1332(d)(2) and (5)(B).

13.     This case is properly removed to this Court because, as more fully set forth below, pursuant to 28 U.S.C. § 1332(d)(2): (i) the citizenship of at least one class member is different from that of Wells Fargo; (ii) the aggregate amount placed in controversy by the claims of Plaintiff and the proposed, putative class members exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (iii) there are at least 100 putative class members

A.     There Is Minimal Diversity of Citizenship.

14.     CAFA provides that the minimal diversity requirement is met if "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). This requirement is met here, as the named Plaintiff and Wells Fargo are citizens of different states for purposes of diversity jurisdiction.

15.     The Complaint alleges that Plaintiff "is an adult individual residing in Brockton, Massachusetts." See Complaint ¶ 5. Thus, based upon her own allegations, for purposes of diversity of citizenship under 28 U.S.C. § 1332, Plaintiff is a citizen of the Commonwealth of Massachusetts.

16.     Wells Fargo is a national banking association organized and operating under the National Bank Act (12 U.S.C. § 21, et seq.) and is subject to the regulation and supervision of the Comptroller of the Currency of the United States Department of the Treasury. National banking associations are deemed "citizens of the States in which they are respectively located." 28 U.S.C. § 1348. The United States Supreme Court has held that this language means that a national banking association is a citizen of the State in which its main office, as set forth in its articles of association, is located. See Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318 (2006). Wells Fargo's main office is in Sioux Falls, South Dakota. See https://www.occ.treas.gov/topics/licensing/national-banks-fed-savings-assoc-lists/national-by-name-pdf.pdf. Thus, for purposes of diversity of

citizenship under 28 U.S.C. § 1332, Wells Fargo is a citizen of South Dakota. See, e.g., McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 212 (1st Cir. 2012).

17.     Because Plaintiff is a citizen of the Commonwealth of Massachusetts and Wells Fargo is a citizen of South Dakota, minimal diversity is established under CAFA pursuant to 28 U.S.C. § 1332(d)(2)(A).

B.     CAFA Amount In Controversy Threshold Is Met (Excess of $5 Million).

18.     Under CAFA, the claims of all putative class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  See 28 U.S.C. § 1332(d)(6).

19.     Here, assuming the truth of Plaintiff's allegations, considering Wells Fargo's allegations herein, and aggregating the alleged damages for all putative class members, as the Court must, the relief sought by the Complaint exceeds $5,000,000, exclusive of interest and costs, based upon simple arithmetic regardless of which of the various methods or metrics used to calculate the amount in controversy.  See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 135 S. Ct. 547, 554 (2014) (for purposes of determining jurisdiction under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

20.     First, Plaintiff asserts in her civil cover sheet that she is seeking "$50,000.00."  See Exhibit C, Civil Action Cover Sheet.[3]  Where the Complaint alleges that "Plaintiff's claims are typical of the claims of the class members," it is reasonable to conclude that the damages she is seeking are typical or representative of each putative class member.  See Complaint ¶ 22.

---

[3] It would appear that Plaintiff chose the $50,000 amount in order to meet the minimum amount in controversy requirement of the Massachusetts Superior Court.

21.     Wells Fargo alleges that, based upon an initial review of its business records, there are at least 10,000 Massachusetts consumers with mortgage loan accounts who were 30 days delinquent at some point within the last four years, such that they **may have** received phone calls from Wells Fargo.[4]

22.     Multiplying the $50,000 in damages sought by Plaintiff by 10,000 accounts results in an amount in controversy far in excess of the $5 million threshold for purposes of 28 U.S.C. § 1332(d)(6).

23.     Second, and in the alternative, estimating the aggregate damages based upon the allegations in the Complaint, taken as true for purposes of removal, also demonstrates that the amount in controversy exceeds $5 million.

        a.     Plaintiff seeks "actual and/or statutory damages" pursuant to Chapter 93A and further alleges that those damages should be trebled because "Defendant willfully and knowingly violated 940 CMR § 7.04(1)(f)." See Complaint at Demand for Relief (Wherefore clause).  Chapter 93A permits recovery "in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation…"  See Mass.

---

[4] This estimate represents an amount of consumers who may *potentially* fall within Plaintiff's proposed class definition.  Plaintiff's proposed class is flawed and makes its impossible to determine the precise number of actual class members—i.e., Massachusetts consumers who "received in excess of two telephone calls regarding a debt from [Wells Fargo] within a seven-day period." Compl. ¶ 17.  First, the proposed definition is an improper "fail safe" class. A "fail-safe" class is one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim, and thus the existence of the claim "cannot be ascertained until the conclusion of the case, when liability is determined." As a result, at the outset of the case were liability is not determined, it is impossible to know the exact size of the proposed class, assuming there is even a class at all. Second, there are numerous individualized inquires that preclude a determination of the precise class size, including, but not limited to, how many calls each consumer received (if any), the purpose of each call placed to each consumer, and whether each call qualifies as a "communication" under 940 CMR § 7.04.  See, e.g., Armata, 480 Mass. at 20 (certain calls *not* "communications," including "when debtors do not answer and their voicemail or answering system is not set up, their mailbox is full, or their telephones have been disconnected"); 940 CMR 7.04(1)(f) (not a "communication" if creditor responds to a request for "communication" from debtor).

6

Gen. Law ch. 93A, § 9(3).  The Court may consider Plaintiff's demand for treble damages in its analysis.  See Law Office of Joseph J. Cariglia, P.C. v. Jelly, 146 F. Supp. 3d 251, 254 (D. Mass. 2015) ("The amount in controversy includes statutory multipliers of damages, such as the treble damages provision in Mass. Gen. Laws ch. 93A.").

     b.    Thus, based upon her own allegations, Plaintiff is seeking at least $75 for each violation ($25 statutory damages trebled).  See also F.C.I. Realty Tr. v. Aetna Cas. & Sur. Co., 906 F. Supp. 30, 32 n.1 (D. Mass. 1995) (holding treble damages "must be considered to the extent claimed in determining the jurisdictional amount").

     c.    As to the number of violations she herself allegedly sustained, Plaintiff's Complaint alleges that Wells Fargo "regularly" placed more than two calls per week in violation of the two-call limit set forth in 940 CMR § 7.04 in the four years prior to filing.  See Complaint at ¶ 1.  Plaintiff does define "regularly," nor does she make specific allegations as to the time, date, or nature of any of the alleged calls.

     d.    Importantly, Plaintiff places no limit on the number of alleged communications that she received in the four years prior to the filing of the Complaint.  Plaintiff alleges that Wells Fargo called her on multiple occasions in violation of 940 CMR § 7.04(1)(f) in the four years prior to filing.  See Compl. at ¶13 ("During the calls …"); Compl. at ¶14 ("repeated calls …"); Compl. at ¶14 ("repeated calls …") (plural, indicating more than one call); Compl. at ¶14 ("numerous debt collection calls per week …") (using plural, i.e., more than a single call).

     e.    Assuming arguendo that each call over the limit is a separate violation—which Wells Fargo does not concede—Plaintiff's statutory damages under Chapter 93A would be at least $75 per week.  Because Plaintiff has asked for damages that cover the 4 years prior to filing, that means she seeks damages for violation in a total of 208 weeks (52 weeks per year x 4

years).  The $75 per week damages, multiplied by the 208 weeks during which she alleges to have received these calls means that Plaintiff's individual, statutory damages would total approximately $15,600 if the allegations of her Complaint are accepted as true.[5] See Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 82 (1st Cir. 2014) (calculating amount in controversy using similar method and estimations).

    f. Plaintiff's Complaint goes on the allege that "Plaintiff's claims are typical of the claims of the class members, since each of the claims arises from receiving in excess of two debt collection calls within a seven-day period" and also that "[i]t is Wells Fargo's practice to call Massachusetts consumers more than twice a week to attempt to collect consumer debts."  See Complaint ¶¶ 1, 22.[6]  Thus, using Plaintiff's own purported statutory damages of $15,600 as "typical" of each class member, which Plaintiff alleges, a class of only 325 members would result in $5,070,000 as the amount in controversy for purposes of 28 U.S.C. § 1332(d)(6).

    g. Wells Fargo alleges that, based upon an initial review of its business records, there are at least 10,000 Massachusetts consumers with mortgage loan accounts who were 30 days delinquent at some point within the last four years, such that they **may have** received phone calls from Wells Fargo.[7]

---

[5] This does not even account for any "actual damages" suffered by Plaintiff and the putative class members, which Plaintiff also seeks to recover—although the Complaint fails to explain the basis or amount of those purported actual damages.

[6] Wells Fargo denies that has a "practice to call Massachusetts consumers more than twice a week to attempt to collect consumer debts."  Indeed, Wells Fargo maintains policies and procedures that specifically comply with the debt collection regulation upon which Plaintiff relies.

[7] Again, this estimate represents the number of consumers who may *potentially* fall within Plaintiff's proposed class definition notwithstanding that the definition proposed a flawed "fail-safe" class and notwithstanding that Wells Fargo denies liability in any event.

h.      Multiplying the $15,600 in damages sought by Plaintiff by 10,000 accounts results in an amount in controversy far in excess of the $5 million threshold for purposes of 28 U.S.C. § 1332(d)(6).

24.      The foregoing calculations do not even take into account Plaintiff's demand for attorney's fees.  See Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001) (attorney's fees in Chapter 93A claims must be considered in determining the amount in controversy because the statute "allows plaintiffs to collect attorney's fees as part of their damages"). To be sure, in her Complaint, Plaintiff seeks to recover "treble damages" for herself and the putative class, and recover her "reasonable attorney fees, litigation expenses and costs" under Chapter 93A.  See Complaint at Demand for Relief (Wherefore clause).

25.      Wells Fargo has satisfied its burden of demonstrating a reasonable probability that the amount in controversy exceeds $5 million even using a conservative interpretation of Plaintiff's Complaint.  See Liu v. Amerco, 677 F.3d 489, 493 (1st Cir. 2012) (amount in controversy would "exceed the minimum $5 million figure given the thousands" of class members multiplied by "the minimum statutory damages under chapter 93A").

26.      For all these reasons, regardless of the calculations performed, CAFA's amount in controversy threshold is met here.  Based upon the Complaint and Wells Fargo's additional allegations, the aggregate damages sought by Plaintiff on behalf of the putative class exceed $5,000,000 for purposes of 28 U.S.C. § 1332(d)(2).

C.      CAFA Numerosity is Satisfied.

27.      Plaintiff alleges that "[c]lass members are believed to be so numerous that joinder of all members is impractical."  Complaint ¶ 18.

28.      Wells Fargo alleges that, based upon an initial review of its business records, there are at least 10,000 Massachusetts consumers with mortgage loan accounts who were 30 days

delinquent at some point within the last four years, such that they ***may have*** received phone calls from Wells Fargo.[8]

29.    Thus, based upon Plaintiff's allegations and Wells Fargo's initial investigation, there are more than 100 persons in the putative class for purposes of 28 U.S.C. § 1332(d)(5)(B).

III.    <u>Procedural Compliance.</u>

30.    In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after the service on Wells Fargo of the pleading upon which this removal is based—the Complaint.  Specifically, Wells Fargo accepted serving of the Complaint on December 23, 2020.  <u>See</u> <u>Exhibit B</u>, Waiver of Service.  This Notice of Removal is filed within 30 days of that date.

31.    Pursuant to 28 U.S.C. § 1441, the right exists to remove this case from the State Court to the United States District Court for Massachusetts, Boston Division.  The United States District Court for Massachusetts, Boston Division, embraces the county (Plymouth County) in which the State Court action is now pending, and thus, this Court is a proper venue for this action pursuant to 28 U.S.C. § 84(c)(3).

32.    No previous application has been made for the relief requested herein.

33.    Pursuant to the provisions of 28 U.S.C. § 1446(a), attached hereto are copies of Plaintiff's Summons and Complaint, filed in State Court on April 8, 2019 (<u>Exhibit A</u>), which was served on Wells Fargo as of December 23, 2020.  <u>See</u> <u>Exhibit B</u>, Waiver of Service.

34.    Additionally, Wells Fargo also attaches the Civil Cover Sheet filed by Plaintiff in State Court.  <u>See</u> <u>Exhibit C</u>.

---

[8] <u>See</u> FN4, FN7.

35.     Further, pursuant to Local Rule 81.1, certified copies of all pleadings, records, orders, and proceedings from the State Court will be filed with this Court within 28 days.

36.     Written notice of the filing of this Notice of Removal will be served upon counsel for Plaintiff as required by law.

37.     A true and correct copy of this Notice of Removal will be promptly filed with the clerk of the State Court, as required by law.

38.     In the event any question arises as to the propriety of the removal of this matter, Wells Fargo requests the opportunity to submit briefs and be heard at oral argument in support of its position that removal is proper.

39.     In the event that Plaintiff seeks to remand this case, or the Court considers remand *sua sponte*, Wells Fargo reserves its right to submit additional argument or jurisdictional evidence in support of removal.  See Dart Cherokee, 574 U.S. 81, 135 S. Ct. 547, 554.

IV.     <u>Conclusion.</u>

WHEREFORE Wells Fargo hereby removes this case from the State Court, where it is now pending, to this Court and requests that the Court assume jurisdiction over this matter and that no further proceedings be held in the State Court.

Respectfully submitted,

Wells Fargo Bank, N.A.,

by its attorneys,

*/s/ Sean R. Higgins*

Jeffrey S. Patterson (BBO# 671383)

jeffrey.patterson@klgates.com

Sean R. Higgins (BBO# 659105)

sean.higgins@klgates.com

Edward J. Mikolinski (BBO# 687770)

edward.mikolinski@klgates.com

K&L Gates LLP

State Street Financial Center

One Lincoln Street

Boston, MA 02111

(617) 261 3100

Dated: January 21, 2021      (617) 261 3175 (f)

## CERTIFICATE OF SERVICE

I, Sean R. Higgins, certify that on January 21, 2021 this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail, postage prepaid, to those indicated as non-registered participants.

*/s/ Sean R. Higgins*

Sean R. Higgins